1997 SD 130

STATE of South Dakota, Plaintiff
and Appellee,

v.

Vernon EDWARDS, Defendant
and Appellant.

No. 19797.

Supreme Court of South Dakota.

Considered on Briefs March 27, 1997.

Reassigned Aug. 19, 1997 and Nov. 3, 1997.

Decided Nov. 25, 1997.

Rehearing Denied Dec. 31, 1997.

Mark Barnett, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, for plaintiff and appellee.

Cynthia A. Howard, Minnehaha County Public Defender, Sioux Falls, for defendant and appellant.

KONENKAMP, Justice (on reassignment).

[¶ 1.] We must decide whether a competency hearing is required when a psychiatrist verifies a defendant understands the court proceedings, but states further observation would be "helpful" in deciding if defendant's "ideas are the product of mental illness or disgust with the system." At times, Vernon Edwards disrupted proceedings, lapsed into irrelevant rambling, and demanded a new attorney, yet based upon his answers to the trial court's extensive questioning, he expressed an adequate understanding of the legal process and indicated he could cooperate with his lawyer. The court decided no reasonable cause existed to justify a competency hearing. Finding no statutory or due process violation, we affirm Edwards' conviction for arson.

### Facts

[¶ 2.] Edwards was indicted for one count of first degree arson. The Minnehaha County Public Defender's Office was appointed to represent him and a series of pre-trial hearings followed. Edwards was uncooperative and exhibited peculiar behavior during these hearings. At a suppression hearing, for example, he initially said he did not wish to testify. After a recess, he submitted a rambling written statement to the trial court, complaining he was not provided with proper discovery in the case. Later, he interrupted the trial court while it was ruling and asked to testify in the proceedings.

[¶ 3.] During a discovery hearing, Edwards complained about his attorney. He also stated his belief that a woman wearing a tape recorder had visited him in jail. When the trial court attempted to rule, Edwards cursed and swore at the judge and had to be restrained by deputies. His counsel then requested a psychiatric examination, stating it was the third time he had observed this behavior. The trial court granted the request. During the remainder of the hearing, Edwards continued his disruptive behavior, interrupting whomever was speaking. At the conclusion of the hearing, he again began rambling about the woman wearing the tape recorder and about lack of access to discovery.

[¶ 4.] In another hearing, Edwards sought to remove his attorney from the case. The court questioned him about his age, education, experience with the court system and his understanding of trial proceedings. It also asked him about his understanding of the charge against him and the maximum penalty. Although Edwards lapsed into periodic references to the woman with the tape recorder and his lack of access to some tape recordings, he was accurate in his understanding of the trial court's questions and responsive with his answers. By the end of the exchange, Edwards agreed to continue with his court appointed counsel if he could write down questions he would like to ask during trial. The trial court stated it would decide later if it would permit Edwards to ask the questions.

[¶ 5.] On the day before trial, defense counsel submitted a psychiatric report prepared by Dr. Daniel Kennelly, a forensic psychiatrist. The report was based upon three sessions Dr. Kennelly had with Edwards and provided in part:

> [Edwards] has numerous complaints relative to lies being told about him and to him. In this he includes his attorney and also complains that "he asked me personal questions."

> [Edwards] reports psychiatric care in Nevada while in a prison and in Green Bay, Wisconsin in 1990. He reports visions. He states that he will stand out among people and maybe even lead a nation. He ascribes this to the presence of God. "God talks to me all the time; not a thing I hear, I feel him." However, he specifically denies that talking to God is related to that with which he is charged with. He also denies and [sic] feelings of dangerousness to others or suicide ideas.

> He reports being isolated and mistrustful of others. He reports that people talk about him "they won't let me tell." Expects lies in court and that everybody just talks and that the people on the jury are "a bunch of nosey [sic] people." "They're there to make the system look good. It's a big scam." ... He sees both the prosecutor and public defender as working to put people in jail. He only sees his family and a potential outside attorney as being able to help him.

> He knows what a witness is but this leads immediately to talk about how the judge and jury will lie. He also denies any misbehavior in court other than pushing a chair. He indicates other knowledge about court such as there were not any eyewitnesses and that the police broke into his apartment, and that a lawyer can get a case thrown out of court.

> \*   \*   \*   \*   \*   \*

> He states he would like to plead his own cased [sic] because it is better if he goes to prison with his own efforts rather than someone else's. He would like to go to the electric chair. He reports he would like to see a chaplain. If he has to go to Yankton

he would like furlough to get his clothes and money.

\* \* \* \* \* \*

His general speech and word usage is seen as somewhat higher than his eighth grade education. Memory is not excellent but adequate. Intelligence would appear to be in the average range. He does have difficulty thinking in abstract terms and has a number of grandiose ideas.

He does show evidence of a thought disorder with paranoid trends. The affect [sic] on competency for trial is not clear. Being angry about a legal circumstance and about the legal system does not necessarily mean incompetence.

Observation would be helpful in determining if his ideas are the products of mental illness or disgust with the system.

He would have the ability to factually understand court proceedures [sic] but he expresses ideas that are not fully rational.

[¶ 6.] Based upon this report, Edwards' counsel requested additional psychiatric testing and a competency hearing. The trial court again conducted an extensive colloquy with Edwards about the charge, the elements of the offense, the time of the offense, the maximum penalty, what would happen at trial, what witnesses do and who the witnesses were in the case. Despite digressions into irrelevant matters, Edwards exhibited an understanding of the trial court's questions and answered them relevantly. The trial court also probed the reference in the psychiatric report to Edwards' "visions." While Edwards stated he had experienced, "visions," he was cryptic about what they were and again rambled on about irrelevant matters. At the conclusion of the hearing, the trial court found Edwards able to understand the proceedings and to assist his attorney in his own defense.

[¶ 7.] Edwards' jury trial occurred without incident. He did not testify. The jury returned a guilty verdict and Edwards was sentenced to twenty-four years in the penitentiary with three years suspended. He appeals.

**Issue**

[¶ 8.] **Did the trial court violate Edwards' due process rights by not ordering a competency hearing?**

[¶ 9.] "[A]ll criminal defendants have a due process right, in certain circumstances, to have their competence determined in an evidentiary hearing." *Hurney v. Class,* 1996 SD 86, ¶ 22, 551 N.W.2d 577, 583 (1996) (quoting *Weisberg v. State of Minnesota,* 29 F.3d 1271, 1275—76 (8th Cir.1994)). SDCL 23A–10A–3 codifies this requirement by providing in part that:

At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the prosecuting attorney may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or developmental disability, or other conditions set forth in § 23A–10A–1, rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceeding against him or to assist properly in his defense.

This court has listed three factors for the trial court to consider in deciding whether to hold a competency hearing:

(1) the existence of a history of irrational behavior;

(2) defendant's demeanor at trial; and

(3) prior medical opinion.

*Withorne v. Solem,* 385 N.W.2d 506, 508 (S.D.1986)(citing *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)). "[E]ven one of these factors standing alone may, in some circumstances, be sufficient." *Drope,* 420 U.S. at 180, 95 S.Ct. at 908, 43 L.Ed.2d at 118. The question on review of a trial court's failure to hold a competency hearing is whether the trial court had evidence before it which should reasonably have caused it to doubt the defendant's competence. *Hurney,* 1996 SD at 86¶ 23, 551 N.W.2d at 577 (quoting *U.S. v. Lewis,* 991 F.2d 524, 527 (9th Cir.1993)). If so, its fail-

ure to hold a competency hearing violated due process. *Id.*

[¶ 10.] Edwards asserts Dr. Kennelly's psychiatric report, defense counsel's opinion and his rambling responses to the trial court's questions provided sufficient evidence to compel the trial court to hold a hearing on his competency to stand trial. Yet Dr. Kennelly's psychiatric report was inconclusive on the issue of Edwards' competence. While the report indicated Edwards claimed prior psychiatric treatment in Nevada and Wisconsin, his care in Nevada was "while he was in prison." Thus, Edwards had obviously been through court systems in other states and was not found incompetent. Moreover, although the psychiatric report mentioned that Edwards exhibited various mental problems, psychiatric disorders alone will not necessarily signify incompetence. In that regard, it is noteworthy that despite three separate sessions with Edwards, Dr. Kennelly was unable to conclude that Edwards was incompetent to face trial. In essence, what he recommended was a second opinion. Furthermore, while his report did say Edwards' competency for trial was not clear, it also stated "[Edwards] would have the ability to factually understand court [procedures.]" This differs in no significant respect from saying Edwards could understand the nature and consequences of the proceeding against him. Thus, despite Dr. Kennelly's suggestion of further observation, a plain reading of his report establishes Edwards met the legal standard for competency.

[¶ 11.] Even if Dr. Kennelly had opined Edwards was incompetent to proceed, medical opinion is merely a factor in deciding whether to order a competency hearing and the trial court was not bound it. *See State v. Iron Shell,* 301 N.W.2d 669, 672 (S.D. 1981)(worth and weight of expert testimony is for the finder of fact and expert testimony is not binding on the fact-finder). We must remember that "[t]he subtleties and nuances of psychiatric diagnosis render certainties virtually beyond reach in most situations," as "[p]sychiatric diagnosis . . . is to a large extent based on medical 'impressions' drawn from subjective analysis and filtered through the experience of the diagnostician." *Ad-*

*dington v. Texas,* 441 U.S. 418, 430, 99 S.Ct. 1804, 1811, 60 L.Ed.2d 323, 333 (1979).

[¶ 12.] Defense counsel's belief Edwards' mental state required a competency hearing was certainly an appropriate factor for the court to consider in determining whether to hold a competency hearing. However, it was not decisive of the issue. As reasoned by the *Eighth Circuit Court of Appeals in Branscomb v. Norris,* 47 F.3d 258, 261—62 (8th Cir.1995):

> Unless there is some contrary indication, state and federal trial judges may presume that defendants are competent. Other than a statement by defense counsel that Branscomb exhibited to them "extreme distrust, paranoia, and flights of fantasies," the trial court had before it no evidence that Branscomb acted irrationally. While some of Branscomb's claims about himself were unquestionably false, *he communicated effectively with the trial judge during his change of plea hearing, and he testified coherently from the witness stand during a suppression hearing.* Branscomb denied that he had undergone prior psychiatric evaluation or treatment, and there is no evidence in the record to contradict his report. The state psychiatrist concluded that Branscomb did not suffer from major psychosis, and *the statement of defense counsel alone was not enough to establish sufficient doubt about Branscomb's competency.* On these facts, the trial judge was not required to hold a competency hearing *sua sponte.* (citations omitted)(emphasis added).

This holding makes clear that a trial court's determination a competency hearing is unnecessary can prevail over defense counsel's stated need for such a hearing when the trial court's decision is based upon the defendant's ability to communicate effectively and coherently with the court. While Edwards might question whether he communicated effectively or coherently in the proceedings before the trial court, it would be a mistake for us to focus narrowly on the cold appellate record of his ramblings as an indicator of incompetence. Unlike our vantage point, the trial judge was positioned to directly observe Edwards and to talk with him personally. Fur-

thermore, not even Dr. Kennelly appears to have attached much significance to Edwards' ravings. As the doctor stated, "[b]eing angry about a legal circumstance and about the legal system does not necessarily mean incompetence."

[¶ 13.] Our function is to decide if the record supports the judge's decision. Sorting carefully through some of his "ramblings," it is apparent Edwards understood: he was charged with first degree arson with a maximum penalty of life in prison; the State would have to prove its case by having someone say they saw him at the scene of the crime or something of that nature; a charge of arson of an occupied structure means that people were staying in the structure; a jury trial involves people getting their ideas together and trying to determine whether a person is innocent or guilty; the State would prove its case against him through the word of the investigating police officer whose credibility Edwards questioned; the victim was a person he was allegedly stalking and that she was in the "occupied place" with her boyfriend; and the date of his alleged arson was July 13, 1995 (the actual date alleged was July 12, 1995). Edwards also asked questions about subpoenas, how the jury would be selected and if he could get a jury of his peers.

[¶ 14.] Edwards' exchange with the trial court on the above matters did not reflect the technical knowledge of a person trained in the law, but it was sufficient to show Edwards' rational understanding of the proceedings against him and his ability to assist in his defense. That Edwards was able to assist his attorney is further demonstrated by the fact that Edwards points to no additional evidence of incompetence displayed during trial. Although Edwards never testified during trial, there were no complaints from his counsel at trial or at sentencing that Edwards could not assist in his defense. In fact, the only evidence of Edwards' demeanor during trial is a statement by his counsel at sentencing that Edwards was well behaved and accepted the verdict when it came in.

[¶ 15.] In *Maggio v. Fulford,* 462 U.S. 111, 117–118, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794, 800 (1983), the United States Supreme Court upheld a state trial judge's refusal to conduct a competency hearing stating:

The Court of Appeals apparently concluded that the trial judge was obligated to credit both the factual statements and the ultimate conclusions of Dr. McCray solely because he was "unimpeached." [*Fulford v. Maggio,*] 692 F.2d [354] at 354 [(5th Cir.1982)]. This is simply not the law.

" 'Face to face with living witnesses the original trier of the facts holds a position of advantage from which appellate judges are excluded. In doubtful cases the exercise of his power of observation often proves the most accurate method of ascertaining the truth ... How can we say the judge is wrong? We never saw the witnesses....' " *United States v. Oregon Medical Society,* 343 U.S. 326, 339, 72 S.Ct. 690, 698, 96 L.Ed. 978 (1952), quoted in *Marshall v. Lonberger,* 459 U.S. 422 at 434, 103 S.Ct. 843 at 851, 74 L.Ed.2d 646 (1983).

We are convinced for the reasons stated above that the question whether the trial court's conclusions as to respondent's competency were "fairly supported by the record" must be answered in the affirmative.

Also, in *U.S. v. Long Crow,* 37 F.3d 1319, 1326 (8th Cir.1994), the Eighth Circuit Court of Appeals held:

Long Crow's testimony at the substitution of counsel hearing one month before trial was, to a large extent, irrelevant rambling. At trial, although Long Crow occasionally rambled on in a monologue, most of his testimony was very coherent and articulate, indicating that *he had a rational understanding of the proceedings against him.* Additionally, there is no indication of the type of irrational or bizarre behavior that would normally indicate a competency problem.

*We are firmly convinced that "a trial court is better able than we are to judge the demeanor of an accused."* [*Griffin v. Lockhart,* 935 F.2d 926, 931 (8th Cir. 1991) ]. Given all the facts and circumstances before the district court, we cannot conclude that the district court acted unreasonably by failing to doubt Long Crow's competence to stand trial. Therefore, the

district court did not violate Long Crow's right to due process by not holding a sua sponte hearing to determine his competency to stand trial. (emphasis added).

[¶ 16.] Similarly, giving deference to the trial court's ability to assess Edwards' deportment and based upon Edwards' satisfactory comprehension and the psychiatric evidence that he could factually understand court procedures, we hold the trial court did not violate Edwards' due process rights in denying a competency hearing.

[¶ 17.] Affirmed.

[¶ 18.] MILLER, C.J., and GILBERTSON, J., concur.

[¶ 19.] SABERS and AMUNDSON, JJ., dissent.

SABERS, Justice (dissenting).

[¶ 20.] Based upon Edwards' statements, Dr. Kennelly's observations, and defense counsel's concerns, Edwards' competence to properly assist in his defense was clearly in question. Once the trial court was presented with a reasonable basis upon which to conclude Edwards may be incompetent, it should have ordered a competency hearing.

> At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the prosecuting attorney may file a motion for a hearing to determine the mental competency of the defendant. The court *shall* grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or developmental disability, or other conditions set forth in § 23A–10A–1, rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceeding against him or to assist properly in his defense . . . .

SDCL 23A–10A–3 (emphasis added). When "shall" is the operative verb in a statute, it is given "obligatory or mandatory" meaning.

*See In re Groseth Int'l, Inc.,* 442 N.W.2d 229, 231–32 (S.D.1989) (citing *Person v. Peterson,* 296 N.W.2d 537 (S.D.1980); *Tubbs v. Linn,* 75 S.D. 566, 70 N.W.2d 372 (1955); 2A *Sutherland Stat. Const.* § 57.03, at 643–44 (4th ed.1984); Sutton, *Use of "Shall" in Statutes,* 4 J. Marshall LQ 204 (1938), *reprinted in* 1A *Sutherland Stat. Const.* 691 (4th ed.1985)); [1] *see also* SDCL 23A–10A–2: "A person cannot be tried, sentenced, or punished for any public offense while he is mentally incompetent to proceed."

[¶ 21.] "Since the competency of the accused to stand trial controls whether there is even going to be a trial, it necessarily follows that a competency hearing is a *basic stage* of the proceeding." *State v. Jones,* 406 N.W.2d 366, 370 (S.D.1987) (emphasis added).

> When the competency of the accused is put in question he may or may not have the mentality to fairly defend himself. If in fact the defendant is less than competent, however, a handicap exists which renders a fair trial impossible. An incompetent person cannot be fairly tried. . . . Accordingly, our system of law must shroud such an accused with whatever mantle of protection is necessary to insure his due process rights are fully protected.

*Id.*

[¶ 22.] Counsel for Edwards stated that Dr. Kennelly thought the "optimum solution" would be further observation at the Human Services Center in Yankton. The trial court should not have ignored this advice. Whether Edwards' "ideas are the products of mental illness" is not a question the trial court is qualified to answer. The court should have sent Edwards to Yankton for observation and then held a competency hearing.

[¶ 23.] When defense counsel made the motion for a hearing to determine his competency, the trial court asked Edwards several questions that prompted responses which the majority opinion characterizes as "relevant", *supra* ¶ 6.

> THE COURT: What do you think a witness is?

---

1. See also SDCL 2–14–2.1, effective July 1, 1997, which provides: "As used in the South Dakota Codified Laws to direct any action, the term, shall, manifests a mandatory directive and does not confer any discretion in carrying out the action so directed."

THE DEFENDANT: A person that is coming to say that they seen something or heard something I guess. I guess a witness—but, I guess, it has to be some credibility. People say, hey, you know, we got a witness here but, you know, it's, you know, it's the type of the people you get. I guess that has got a lot to do with it. People are always going to cater, you know, to their own kind. That's human nature to a certain degree. I'm not trying to put nobody down because I'm that way. But I'm a very fair person. Still to me a human being is the thing that come first or they are going to cater to the opposite sex or something of that nature. I feel that, you know, that's how come one of my friends told me to contact the UCLA [sic] because of the switch, you know, and I did—I tried to. I wasn't successful, you know. I really feel I come into this courtroom, hey, you know, this is left up to the Man upstairs. Whatever is for me it's going to be for me, you know. That's life. But, hey, I got to go down trying, you know. That's the onlyous [sic] thing I've got to say, basically.

You know, it's, hey, like this here. You know, it would be a different thing if there was six people up there on the jury—I don't care about a mixed jury. I don't want to come in here—I wrote my family, I said look here, you get down here. I don't want to be sitting up in the courtroom the only person with dark skin up there. That's a frightening thing regardless. It's just like, you know, blood is thicker than water 365 days of the year. It comes down to a family and that's family who—I draw a line between me and my father and that's the closest thing on the face of the earth. There are certain things you have to draw a line then you have to start facing reality and look at things like it's reality.

I submit the above answer is anything but "relevant" and is more fairly characterized as rambling and irrational. Edwards was often paranoid in his statements to the court. He insisted that two detectives forced their way into his home. He also seemed to think they switched identities in court to fool him. At one hearing, he was restrained by law enforcement after he interrupted the trial court and repeatedly swore at the judge. Following this outburst, the trial court ordered a psychiatric examination at defense counsel's request. Defense counsel stated, "This is about the third time that this kind of behavior has happened. It happened over to the jail the other day ... Some of the letters I received kind of indicated some bizarre thought patterns."

[¶ 24.] The trial court indicated that Edwards understood the arson charge, knew who the witnesses were, and recalled testimony from an earlier hearing; however, his competency to realistically assist in his defense remained questionable and his paranoia was apparent in his rambling and irrational answers. *Cf. Hurney v. Class,* 1996 SD 86, ¶ 14, 551 N.W.2d 577, 582 (affirming finding of competence based in part on defendant's testimony, which was "competent, lucid, responsive and relevant"); *see also* SDCL 23A–10A–1:

> The term, "mentally incompetent to proceed," as used in this chapter, means the condition of a person who is suffering from a mental disease, developmental disability, as defined in § 27B–1–3, or psychological, physiological or etiological condition rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him *or* to assist properly in his defense.

(Emphasis added). The majority opinion concentrates on Edwards' ability to understand the nature and consequences of the proceeding against him; however, that is only half the inquiry—he must also be able to "assist properly in his defense." SDCL 23A–10A–1. His ability to assist in his defense remained questionable and his own attorney even doubted Edwards' competency to proceed.

[¶ 25.] This court has listed three factors for the trial court to consider in deciding whether a competency hearing should be held:

> (1) the existence of a history of irrational behavior;
>
> (2) defendant's demeanor at trial; and

(3) prior medical opinion.

*Withorne v. Solem,* 385 N.W.2d 506, 508 (S.D.1986) (relying on *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) (other citations omitted)); *but see Drope,* 420 U.S. at 180, 95 S.Ct. at 908, 43 L.Ed.2d at 118 ("[E]ven one of these factors standing alone may, in some circumstances, be sufficient."). Edwards' history of irrational behavior is precisely what led the police to suspect him in this case, and the trial court was aware of that history.[2] As already noted, Edwards' demeanor in the courtroom made his competency questionable. Dr. Kennelly thought that an opinion as to Edwards' competency could not be formed absent additional observation, a suggestion ignored by the trial court. Additionally, Edwards told Dr. Kennelly that he had psychiatric care on at least two prior occasions. The facts clearly support the necessity of a competency hearing under *Withorne.*

[¶ 26.] Edwards' counsel brought this matter to the court's attention when he expressed doubts regarding his competency. As noted in *Branscomb v. Norris,* 47 F.3d 258, 261 (8th Cir.), *cert. denied,* 515 U.S. 1109, 115 S.Ct. 2260, 132 L.Ed.2d 266 (1995), "the trial court may consider an express doubt by the accused's attorney." While not necessarily enough standing alone, *id.,* "an expressed doubt in that regard by one with the closest contact with the defendant . . . is unquestionably a factor which should be considered." *Drope,* 420 U.S. at 177 n. 13, 95 S.Ct. at 907 n. 13, 43 L.Ed.2d at 116 n. 13 (citation & internal quotation omitted).

[¶ 27.] Here, all three of the *Withorne* factors indicating the need for a competency hearing were present. Based upon Dr. Kennelly's initial conclusions, Edwards' disjointed and rambling responses, and defense counsel's concerns, there was clearly "foundation in the record" sufficient to warrant a hearing on Edwards' competency. It is settled law that 1) an incompetent person cannot be fairly tried; 2) our system of law must shroud such an accused with whatever mantle of protection is necessary to insure his due process rights are fully protected;[3] and 3) a competency hearing is a *basic stage* of the proceeding. *Jones,* 406 N.W.2d at 370. We should reverse and remand for such a hearing.

[¶ 28.] AMUNDSON, J., joins this dissent.

---

2.  Edwards was allegedly stalking his former girlfriend. He called her repeatedly and mentioned marriage to her 40–50 times in a short time span. She was sleeping in the apartment building at the time of the arson and alerted police to the possibility of Edwards' involvement.

3.  The burden is not on Edwards to prove that he is incompetent. The State must prove, by a preponderance of the evidence, that he is competent to stand trial. SDCL 23A–10A–6.1: "If the defendant, state, or court asserts that a defendant is mentally incompetent to proceed, the state has the burden of proving the mental competence of the defendant by a preponderance of the evidence." Here, it seems the burden was placed on Edwards. In fact, the State did not even speak during the trial court's discussion with Edwards. In *Jones,* 406 N.W.2d at 370, this court held that placing the burden on the defendant violates the due process guarantees of article VI, § 2 of the South Dakota Constitution.