**Clayton Sheldon CREEK, Petitioner,**

v.

**Douglas WEBER, Warden, South Dakota State Penitentiary, Respondent.**

**No. CIV 08–3003.**

United States District Court, D. South Dakota, Central Division.

Feb. 10, 2009.

Clayton Sheldon Creek, Sioux Falls, SD, pro se.

Craig M. Eichstadt, Assistant Attorney General, Pierre, SD, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION AND ORDER OF DISMISSAL

CHARLES B. KORNMANN, District Judge.

Petitioner pleaded guilty to two counts of forgery in the Second Judicial Circuit, Minnehaha County, South Dakota, on October 19, 2004. He was sentenced on November 12, 2004, to ten years imprisonment[1] on both counts to run consecutively to each other and consecutive to the term he was currently serving for a 2000 rape conviction. Petitioner did not appeal his convictions and sentences to the South Dakota Supreme Court. Petitioner filed a pro se petition for a writ of habeas corpus in Minnehaha County on February 2, 2005, challenging his forgery convictions. Counsel was appointed and an amended petition and second amended petition were filed. The petition for habeas relief was denied on April 16, 2007.

Petitioner submitted a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court submitted the above-entitled matter to U.S. Magistrate Judge Mark A. Moreno and the magistrate judge submitted his report and recommendation to the Court on December 30, 2008, Doc. 51. The report and recommendation was served on the petitioner as required by 28 U.S.C. § 636.

Petitioner did not file any formal objections but he did file "petitioner's handwritten statement of case under the unreasonable ... application clause," Doc. 53, and an "affidavit in support of motion to dismiss the respondents (sic) request attempting to deny petitioner relief," Doc. 55. I will construe those documents as

objections to the report and recommendation.

I have conducted a *de novo* review of the record. I do not, of course, conduct a *de novo* review of the factual and legal determinations as made by the state courts. I do consider whether the state courts' adjudications "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Judge Moreno adequately and correctly sets forth the standards to be applied in this proceeding.

■ Petitioner contends that his conviction and imprisonment resulted from the use of perjured testimony and the suppression of evidence favorable to him. He acknowledges that these claims are procedurally defaulted but contends that he is nonetheless entitled to habeas relief. Petitioner pleaded guilty and therefore waived any claim of deprivation of rights that occurred prior to the entry of his pleas. *Weisberg v. Minnesota*, 29 F.3d 1271, 1279 (8th Cir.1994).

■ Petitioner does not object to the magistrate's statement that he did not file a direct appeal of his forgery convictions but instead states that he was prevented from filing an appeal. That is not true. Petitioner had previously, on February 2, 2004, been sanctioned by the South Dakota Supreme Court for his frequent filing of frivolous documents. Specifically excluded from that order were papers in any criminal case in which he was a defendant, if such papers were filed by an attorney on his behalf or if approved by the Court as procedurally appropriate. He was not prevented from filing a direct appeal.

---

1. Five years of each ten year sentence was suspended on the condition that he not file frivolous motions or papers in any court during the time of his sentences.

Petitioner asserts that he was entitled to a hearing to determine whether he was competent to assist in his defense. I have reviewed the record in this regard and agree with the magistrate that the state court habeas court's findings in this regard were neither contrary to nor involved an unreasonable application or determination of federal law. The state habeas court did obtain a psychological evaluation of the defendant and determined that the defendant was not insane at the time he committed the forgery offenses and was competent to assist in his defense of those charges. Petitioner has not carried his burden to show that the trial court should have had sufficient doubt about his competence when he entered his guilty pleas. *Weisberg v. Minnesota,* 29 F.3d at 1276.

Petitioner objects to the magistrate's handling of the briefing scheduling orders. The magistrate was within his authority to grant extensions of time for the filing of briefs. Petitioner was not prejudiced thereby.

The petition should be denied. The report and recommendation should be adopted. All objections of the defendant should be overruled.

Now, therefore,

IT IS ORDERED, as follows:

1. The petition for a writ of habeas corpus, Doc. 1, is denied and dismissed with prejudice.

2. The report and recommendation, Doc. 51, is adopted.

3. Petitioner's objections, Docs. 53 and 55, are overruled.

4. Petitioner's motions, Docs. 27, 31, 33, 37, 38, 43, and 50, are denied.

2009 DSD 1

## REPORT AND RECOMMENDATIONS FOR DISPOSITION OF PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

MARK A. MORENO, United States Magistrate Judge.

[¶ 1] The above-captioned 28 U.S.C. § 2254 case was referred to this Court by the District Court [1] pursuant to 28 U.S.C. § 636(b)(1)(B) for purposes of appointing counsel, if appropriate, conducting necessary hearings, including an evidentiary hearing, and submitting to the latter court, proposed findings of fact and recommendations for disposition of the case.

[¶ 2] After careful review of the records on file, including the state court filings and transcripts in Minnehaha County CR. No. 04–3027 and CIV. No. 05–3027, Pennington County CR. No. 99–2662 and South Dakota Supreme Court Nos. 24468 and 24510, and based on the totality of the circumstances present, the Court does now make the following findings of fact and report and recommendations for disposition in accordance with the District Court's referral order.

I.

[¶ 3] Petitioner, Clayton Sheldon Creek ("Creek"), challenges his two state forgery convictions under § 2254. These convictions occurred on November 12, 2004, after Creek pled guilty to two counts of forgery as part of a plea bargain.

[¶ 4] Creek was originally charged by complaint with two counts of forgery (in violation of SDCL 22–39–36 (1976)) and two counts of offering a false instrument for recording (contrary to SDCL 22–11–23.1 (1978)). Subsequently, Creek was ar-

---

1. The Honorable Charles B. Kornmann, Unit- ed States District Judge, presiding.

rested on the complaint and appointed counsel. Later, an indictment (charging two of the four offenses) and a superseding indictment (charging all four offenses) were filed.

[¶ 5] Creek was arraigned on each of the indictments. Creek's initial arraignment took place on August 16, 2004. At that time, he was advised of his constitutional and statutory rights, the charges he had been indicted on, as well as the allegations in a habitual offender information that had been filed that day, the maximum penalties he faced by virtue of the charges and being a habitual offender, and was informed that his sentences could be doubled because he was alleged to have been a prisoner at the time he committed the offenses. By way of counsel, Creek entered not guilty pleas to both charges.

[¶ 6] Thereafter, Creek was arraigned on the superseding indictment as well as the habitual offender information and was once more advised of his rights, the charges and allegations against him, and the potential penalties he faced, including those triggered by the information and under SDCL 22-6-5.1 (1978). Creek, again through counsel, entered not guilty pleas to all four charges.

[¶ 7] On October 19, 2004, Creek appeared for a change of plea hearing. Creek's counsel advised the trial court that a plea bargain had been reached and that Creek planned to plead guilty to counts I and III of the superseding indictment. The court informed Creek of what he was charged with, the maximum penalties he faced on each offense and of his rights. When the prosecutor interjected that Creek was subject to § 22-6-5.1's doubling statute (because Creek had committed a felony while in prison), Creek's counsel, and Creek himself, acknowledged that they understood this.

[¶ 8] Trial counsel next explained the terms of the plea bargain. The prosecutor agreed that she would dismiss the habitual offender information and would also dismiss counts II and IV, charging Creek with filing false documents. In return, Creek would plead guilty to the two forgery offenses (counts I and III) and sentencing would be "open," meaning that the trial court could impose 10-year consecutive sentences on each of the two counts, but the defense was free to argue that both sentences should be concurrent with the sentence he was presently serving. The prosecutor and Creek both agreed that this was their understanding of the agreement.

[¶ 9] Following this, the trial court found that Creek had regularly been held to answer the charges against him, was represented by competent counsel, had been advised of the charges and of his constitutional and statutory rights, the pleas available to him and of the maximum penalties. The court also found that Creek understood the charges, his rights, his available pleas and the penalties he faced, that he was acting of his own free will and was competent to enter his pleas. Creek then proceeded to plead guilty to counts I and III of the superseding indictment and the prosecutor offered a factual basis for the pleas, based principally on Creek's admissions to law enforcement. Creek agreed with the prosecutor's recitation of the facts and the court accepted Creek's pleas, finding that they were voluntary and intelligent.

[¶ 10] Creek's sentencing was held on November 12, 2004. The prosecutor emphasized the seriousness of Creek's crimes and requested that he be sentenced to the maximum penalty of 10 years on each forgery count and that the same be made to run consecutively to the Pennington County sentence he was then serving. Trial counsel indicated that Creek had 10 to 11 years left to serve on his 15-year sentence

in Pennington County and asked that the trial court suspend as much time as it thought appropriate on each of the two counts on the condition that Creek not file any false or forged documents in the future. Counsel stressed that Creek knew what he did was wrong and admitted to it. Creek addressed the court, making references to being "accredited by the national administration" and having a "vinyl book." The court regarded this as "gibberish" and sentenced Creek to 10 years on each of the two counts to run consecutive to each other and to the prison term Creek was already serving in Pennington County. The court did, however, suspend five years on each of the counts on the condition that Creek file no frivolous motions or papers in any court during the time of his incarceration. Creek stated that he understood the suspended sentence condition. The sentences were later incorporated into two separate judgements of conviction, one for each count, and counts II and IV, along with the habitual offender information, were formally dismissed.

[¶ 11]   Creek did not appeal his convictions to the South Dakota Supreme Court. Instead, he commenced a habeas corpus action in state court on or about February 2, 2005. Creek filed a *pro se* motion for a mental competency examination and a number of writs and petitions, but the application, upon which he initially pursued habeas relief (which was actually an amended application), was filed on his behalf by court appointed counsel on December 20, 2005. In this application, Creek raised three claims for relief: First, he alleged that he was denied due process and a fair trial by the failure to examine him and hold a hearing on his mental competency in violation of his rights under the federal and state constitutions; second, he alleged that because of his mental illness, he was unable to assist trial counsel and that as such, counsel was unable to adequately represent him in accord with federal and state constitutional strictures; and third, he alleged that counsel failed to make any investigation into his mental health, that this failure fell below reasonable standards for attorney conduct and that he was prejudiced as a result of being convicted of a crime while he was legally insane and incompetent to proceed. Respondent, Douglas Weber ("Weber"), filed a return to the application, denying Creek's allegations, raising several affirmative defenses, and requesting that any provisional writ of habeas corpus be quashed and that all three claims be denied.

[¶ 12]   Creek promptly responded with a motion for psychiatric evaluation which the state habeas court granted. Such an evaluation was thereafter completed and filed (under seal) with the court.

[¶ 13]   Subsequently, Creek filed a second amended application for habeas relief. In addition to his three earlier claims, this application included a fourth claim, wherein he alleged that he never admitted to being a prisoner, and therefore, the doubling statute, SDCL 22–6–5.1, should not have been applied to him.

[¶ 14]   After the completion of the psychiatric evaluation and the filing of the second amended application, the habeas court held an evidentiary hearing at which Creek was represented by counsel. Both Creek and trial counsel testified at the hearing.

[¶ 15]   On January 10, 2007, the habeas court issued a decision denying all requested relief. The court held first that the doubling statute was thoroughly discussed at the time of Creek's two arraignments and change of plea hearing and that he and trial counsel both agreed that the statute applied to him. Further, the court found factually that Creek had committed the acts charged against him "while in his cell at the penitentiary" and that there was

thus no basis for finding the statute inapplicable. On the issue of failure to hold a competency hearing, the court determined that there was no indication that Creek did not understand the nature and consequences of the proceedings against him, that he knew the legal system and understood what was going on, and that he had not met his burden of showing that he had a due process right to such a hearing. Third, the court concluded that mental illness alone was insufficient to establish that Creek was incompetent to assist his counsel, that he had the burden of establishing that he was incompetent at the time he entered his guilty pleas and that he had not carried his burden. Finally, the court found that counsel was not ineffective and that Creek had not met his burden of demonstrating both deficient performance and prejudice under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In doing so, the court noted that in a guilty plea case, Creek was required to show that the prejudice occurring under the second prong of the *Strickland* test was sufficient to cause him to plead guilty rather than go to trial and that Creek had failed to do so.

[¶ 16] The habeas court entered findings of fact and conclusions of law in support of its decision. Thereafter, the court denied a motion for the issuance of a certificate of probable cause. The South Dakota Supreme Court followed suit, initially dismissing such a motion as untimely and then denying it on the merits.

[¶ 17] In response, Creek filed a timely petition, pursuant to § 2254, in federal court. He raised the claims pertaining to being deprived of a full, fair and adequate hearing on legal sanity or mental competency and ineffective assistance of counsel (both of which were previously litigated in the state habeas case). He also claimed that the "State of South Dakota contrived a conviction" and that the "State's depriva-

tion of rights guaranteed by the Federal constitution." He did not raise the other claim litigated in state court, namely, that he was unlawfully classified as a "prisoner" for purposes of the sentencing doubling statute.

[¶ 18] In papers filed after his petition, Creek asserted, or at least tried to assert, other claims/issues. Many of them, however, are simply inapplicable to the case at hand.

[¶ 19] In his filings, Creek refers to other or prior convictions. The instant § 2254 case though, challenges only his two Minnehaha County forgery convictions. Thus, matters that occurred in Pennington County, north of Rapid City, South Dakota, in an area known as "Lakota Homes" or at other locations outside of Minnehaha County are irrelevant to what is being adjudged here. Creek has already unsuccessfully attacked the prior conviction from Pennington County and any challenge now, based on it, will not be considered.

## II.

[¶ 20] The facts surrounding Creek's underlying forgery convictions are relatively straight forward. Creek prepared a document called "Provision [sic] Writ of Prohibition" and signed the name of South Dakota Supreme Court Chief Justice's name by placing a blank document over the Chief Justice's signature and tracing over it. Creek said that he did this to "set a confusion" and because the courts had delayed ruling on his motions. He also admitted to tracing the Clerk's signature on the document and acknowledged that he did not have permission to sign the Chief Justice's name.

[¶ 21] Creek likewise prepared a document entitled "Provisional Writ of Successive Habeas Corpus" that he signed, in an unauthorized fashion, the name of a state

circuit court judge by tracing his name in the same way he had done with the Chief Justice's signature.

[¶ 22] Creek filed both documents in the United States District Court for the District of South Dakota. A law clerk for the District Court reviewed the documents, found them to be suspicious and forwarded the same on to law enforcement for investigation.

[¶ 23] Creek was charged with both forgery and filing the documents. A plea bargain agreement, however, eliminated the filing charges and he was only convicted of two forgery counts.

### III.

[¶ 24] Creek filed a motion requesting that counsel be appointed for him. The District Court denied his motion, but then referred the case to this Court "for the purposes of appointment of counsel if appropriate. . . ." In light of the directive contained in the District Court's referral order, this Court must decide whether counsel should be appointed for Creek in this instance.

[¶ 25] At the outset, it must be observed that "there is neither a constitutional nor statutory right to counsel in habeas proceedings; instead, [the appointment] is committed to the discretion of the trial court." *McCall v. Benson,* 114 F.3d 754, 756 (8th Cir.1997); *see also Pennsylvania v. Finley,* 481 U.S. 551, 555–57, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). A habeas proceeding is civil in nature and "the Sixth Amendment's right to counsel afforded for criminal proceedings does not apply." *Hoggard v. Purkett,* 29 F.3d 469, 471 (8th Cir.1994).

[¶ 26] A court, however, may appoint counsel for a *pro se* petitioner seeking federal habeas relief when "the interests of justice so require." *Hoggard,* 29 F.3d at 471; 18 U.S.C. § 3006A(a)(2)(B). If the court conducts an evidentiary hearing, the interests of justice require the appointment of counsel. Rule 8(c) of the Rules Governing Section 2254 Cases in the United States District Courts ("§ 2254 Rules") ("if an evidentiary hearing is warranted, the judge *must* appoint an attorney to represent a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A." (emphasis added)); *see also Johnson v. Weber,* Civ. No. 05–4062, 2006 WL 704842 at *10 (D.S.D. Mar. 20, 2006). If no evidentiary hearing is necessary, the appointment of counsel is discretionary. *Hoggard,* 29 F.3d at 471; *Johnson,* 2006 WL 704842 at *10.

[¶ 27] In exercising its discretion, a court should first determine whether the habeas petitioner has presented a non-frivolous claim. *Abdullah v. Norris,* 18 F.3d 571, 573 (8th Cir.), *cert. denied,* 513 U.S. 857, 115 S.Ct. 163, 130 L.Ed.2d 101 (1994). If the petitioner has raised only claims that are frivolous or clearly without merit, the court should dismiss the case without appointing counsel. Rule 4 of the § 2254 Rules; *Abdullah,* 18 F.3d at 573. If the petitioner has asserted a non-frivolous claim, the court should then determine whether, given the particular circumstances of the case, the appointment of counsel would benefit the petitioner and the court to such an extent that "the interests of justice so require it." § 3006A(a)(2)(B); *Nachtigall v. Class,* 48 F.3d 1076, 1081 (8th Cir.1995); *Abdullah,* 18 F.3d at 573. In doing so, the court should consider the legal and factual complexity of the case, the petitioner's ability to investigate and present claims and any other relevant factors. *McCall,* 114 F.3d at 756; *Hoggard,* 29 F.3d at 471.

[¶ 28] Applying these factors to this case, the Court concludes that the interests of justice do not require the appointment of counsel. The claims advanced by Creek are either plainly devoid

of any colorable merit on their face, or are ones that do not involve complex legal or factual issues or further fact investigation. *McCall,* 114 F.3d at 756; *Hoggard,* 29 F.3d at 471–72. Creek has demonstrated at least a threshold ability to articulate his claims and is capable of representing himself. *Id.* His petition and other filings are sufficiently understandable and contain proper citations to applicable legal authority so as to enable the Court to determine whether federal habeas relief is warranted. *Nachtigall,* 48 F.3d at 1082. Finally, Creek's claims can easily be resolved on the basis of the state court record. *Hoggard,* 29 F.3d at 472; *Johnson,* 2006 WL 704842 at \*10. For these reasons, the Court finds and concludes that it is unnecessary to appoint counsel for Creek and declines to do so.

### IV.

[¶ 29] The District Court, in its referral order, directed that this Court determine whether an evidentiary hearing was required on Creek's petition ("the above-entitled action is hereby referred ... for the purpose [ ] of ... conducting any necessary hearings, including evidentiary hearings...."). Creek has requested an evidentiary hearing[2] and the Court is duty bound, under Rule 8 of the § 2254 Rules, to decide if an evidentiary hearing is mandated or otherwise called for here.

[¶ 30] Section 2254, as amended by the 1996 Anti–Terrorism and Effective Death Penalty Act (AEDPA), significantly limits the ability of a federal habeas petitioner to challenge a state court decision on the merits and in the use of evidentiary hearings to develop a record in federal court that was never completed and put before the state courts. 28 U.S.C. § 2254(e)(2) controls evidentiary hearings in federal habeas cases. This section states as follows:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

[¶ 31] A federal court thus must initially consider whether there is a factual basis for a claim that was developed in state court, a question normally susceptible to a yes or no answer. *Williams v. Taylor,* 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). If the answer is "yes" and the petitioner has developed the requisite factual basis for his claim in state court, the AEDPA requires the federal court to defer to the state court's factual findings. 28 U.S.C. § 2254(e)(1). Notably, an implicit state court factual determination is tantamount to an express one such that deference is due to either determination. *Parke v. Raley,* 506 U.S. 20, 35, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992); *Marshall v. Lonberger,* 459 U.S. 422, 432–33, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

[¶ 32] If, however, the answer is "no" and it is the petitioner who has "failed" to develop a factual basis for his

2. *See* Docket No. 31 at p. 5 and 22 at p. 3; *but see* Docket Nos. 37 at p. 2, 33 at p. 2.

claim in the course of the state court proceedings and is therefore at "fault" for that deficiency, the AEDPA mandates that he "satisfy a heightened standard to obtain an evidentiary hearing." *Williams*, 529 U.S. at 433, 120 S.Ct. 1479. Section 2254(e)(2)(A) affords the petitioner the "opportunity to obtain an evidentiary hearing where the legal or factual basis of [his] claims did not exist at the time of the state court proceedings." *Williams*, 529 U.S. at 436, 120 S.Ct. 1479. While the petitioner must be diligent in his attempt to develop the state court record, subsection (e)(2)(A)(ii) does not preclude the granting of an evidentiary hearing where "the facts could not have been discovered, whether there was diligence or not." *Williams*, 529 U.S. at 435, 120 S.Ct. 1479. In this way, subsection (e)(2)(A)(ii) "bears a close resemblance to [subsection] (e)(2)(A)(i), which applies to a new rule [of constitutional law] that was not available at the time of the earlier proceedings." *Williams*, 529 U.S. at 435, 120 S.Ct. 1479. If the petitioner is able to establish that at least one of his claims relies on a new rule of law or a previously unavailable set of facts, he must then show that he has a "convincing claim of innocence" under subsection (e)(2)(B) to obtain an evidentiary hearing. *Williams*, 529 U.S. at 435, 120 S.Ct. 1479.

[¶ 33] Here, the factual basis for some of Creek's claims was sufficiently developed in state court. An evidentiary hearing to further address these claims, is unnecessary and all that is left to be done is for the Court to decide whether the state court was correct in its factual determinations. *See* § 2254(e)(1).

[¶ 34] As to the claims he failed to develop in state court, Creek may not now obtain an evidentiary hearing because he cannot meet the "heightened standard" set forth in § 2254(e)(2). Creek does not assert that any of his undeveloped claims rely on a new, retroactive law. Nor has he shown that the relevant facts underlying any of these claims could not have been readily discovered and/or presented during the state habeas proceedings.

[¶ 35] Inasmuch as Creek is unable to satisfy the stringent requirements of § 2254(e)(2)(A), the Court need not reach the question of whether he can establish a "convincing claim of innocence" under subsection (e)(2)(B). *Williams*, 529 U.S. at 435, 120 S.Ct. 1479. This being the case, Creek is not eligible for, much less entitled to, an evidentiary hearing and as such, one will not be held.[3]

## V.

[¶ 36] Review of Creek's claims is governed by the AEDPA. "In the interests of finality and federalism, federal courts are constrained by [the] AEDPA to exercise only a 'limited and deferential review of underlying state court decisions.'" *Evenstad v. Carlson*, 470 F.3d 777, 781–82 (8th Cir.2006) (*quoting Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir.), *cert. denied*, 540 U.S. 1059, 124 S.Ct. 833, 157 L.Ed.2d 716 (2003)). Federal habeas relief will not be granted on any claim "adjudicated on the merits in State court proceedings un-

---

**3.** Even if a habeas petitioner is able to meet the requirements of § 2254(e), a court, in its discretion, may still decline to hold an evidentiary hearing if such a hearing would not be meaningful and have the potential to advance one or more of the petitioner's claims. *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000), *cert. denied*, 531 U.S. 1084, 121 S.Ct.

789, 148 L.Ed.2d 685 (2001). For the reasons more fully explained below, the Court finds and concludes that an evidentiary hearing would not be a warranted use of its discretion under the AEDPA because Creek is not entitled to federal habeas relief based on settled law.

less the adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C § 2254(d)(1).

■ [¶ 37] A federal court's first step, then, in evaluating a challenge to a state court's application of the law is to determine what, if anything, the Supreme Court has said on the subject. From there, the court must proceed to carefully review the decision of the state court. Under the AEDPA, that decision will be viewed as "contrary to" clearly established federal law if the state court either "applies a rule that contradicts the governing law set forth [by the Supreme Court]" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court" and nevertheless arrives at a different result. *Penry v. Johnson,* 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001). As for the "unreasonable application of" inquiry, the federal court should ask whether the state court correctly identifies the governing legal rule, but applied it unreasonably to the facts of the petitioner's case. *Id.* Thus, even if the federal court "concludes" that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if the application is also objectively unreasonable. *Id.* at 793, 121 S.Ct. 1910.

[¶ 38] The factual findings of the state court may also be challenged in a habeas proceeding, but they are subject to an even more deferential review. Relief may be granted if an adjudication by a state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). Factual findings by the state court, however, "shall be presumed to be correct," a presumption that can only be rebutted by "clear and convincing evidence." § 2254(e)(1).

[¶ 39] It is within these legal parameters that the Court must consider, and ultimately decide, the claims Creek has put forth.

## VI.

■ [¶ 40] Creek's first claim, that he was denied an evidentiary hearing on his mental competency/legal sanity, Docket No. 1 at p. 5, was exhausted before the state courts and the decisions by those courts did not rest on a state law ground that was an independent and adequate basis for denying relief. The claim is therefore subject to review by the Court under § 2254(d).

■ [¶ 41] There are circumstances under which a criminal defendant has a due process right to have a hearing to determine his competency to stand trial. This is a well-understood rule of law, that dates back more than four decades. *See Pate v. Robinson,* 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The principles underlying the rule are well understood and universally applied by federal and state courts alike. *See Maggio v. Fulford,* 462 U.S. 111, 117–18, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983); *Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *United States v. Long Crow,* 37 F.3d 1319, 1325–26 (8th Cir.1994), *cert. denied,* 513 U.S. 1180, 115 S.Ct. 1167, 130 L.Ed.2d 1122 (1995); *Griffin v. Lockhart,* 935 F.2d 926, 929–31 (8th Cir.1991); *State v. Edwards,* 1997 SD 130, ¶¶ 9–16, 572 N.W.2d 113, 115–18; *Withorne v. Solem,* 385 N.W.2d 506, 508 (S.D. 1986). In deciding whether to hold a competency hearing, the trial court must consider three factors: (1) evidence of irrational behavior by the accused; (2) the demeanor of the accused at trial; and (3) any prior medical opinions on the mental

competency of the accused to stand trial. *Long Crow,* 37 F.3d at 1325; *Edwards,* 1997 SD 130, ¶ 9, 572 N.W.2d at 115.

[¶ 42] "Absent some contrary indication, the court is entitled to presume[4] that a defendant is competent." *Weisberg v. Minnesota,* 29 F.3d 1271, 1276 (8th Cir. 1994) *(quoting Day,* 949 F.2d at 982), *cert. denied,* 513 U.S. 1126, 115 S.Ct. 935, 130 L.Ed.2d 880 (1995). Whether a hearing should have been held depends, in turn, on whether the defendant's mental competency was in question at the time of his trial. *Weisberg,* 29 F.3d at 1276; *see also Griffin,* 935 F.2d at 929–31.

[¶ 43] Under the deferential standard of review that must be applied in federal habeas cases, the findings and conclusions of the state habeas court were neither contrary to nor involved an unreasonable application or determination of federal law and the facts as presented in the state case. The habeas court in Creek's case considered the three factors outlined by the Supreme Court in *Drope* and ultimately decided that the trial court did not have evidence before it which would or should have reasonably caused it to have a sufficient doubt about his mental competency. The habeas court recognized that Creek had a history of mental illness, but determined that the same did not deprive him of the ability to understand the nature and consequences of the criminal matter he was engaged in. The court reviewed the transcripts of the two arraignments, the change of plea hearing and the sentencing and found no reason to believe that Creek was unable to understand the proceedings against him. Trial counsel testified at the habeas hearing that Creek "clearly knew

what the legal process was", that he was able to assist counsel, and that "he knew what was going on." In counsel's view, a psychiatric evaluation was "a waste of time" and "wasn't going to get us anywhere." And, an evaluation done in connection with Creek's habeas case revealed that his judgment was not impaired and that he was neither mentally incompetent nor insane at the time he committed the forgery offenses and was charged and held to answer the same.

[¶ 44] As with any claim raised in a federal habeas case, Creek is required to prove his entitlement to relief and, in particular, that § 2254(d) has been satisfied. It is plain from the record that the rulings of the state court, on the competency/insanity issue, were both legally and factually reasonable and congruent with Supreme Court precedent. Creek, therefore, cannot prevail on his claim and it must per force be dismissed.

## VII.

[¶ 45] Creek next claims that his trial counsel was ineffective because counsel "coerced" him into pleading guilty without a determination being made of his mental competency or legal sanity, and because counsel did not spend enough time with him or in case investigation. Docket No. 1 at p. 5. The Court disagrees.

[¶ 46] Much of what was just said applies with equal force to this claim and demonstrates that Creek was entitled to, but denied, a mental examination and/or hearing. If anything, the medical evidence of record establishes that Creek was competent and sane at all relevant points in

---

4. This presumption recognizes that most persons are competent. Cases in which a defendant must not be so regarded are departures from the usual course of criminal proceedings; some showing must be made that the circumstances of a particular case should

have engaged the trial judge's attention before he or she can be faulted for failing to inquire as to the defendant's competency. *United States v. Day,* 949 F.2d 973, 982 (8th Cir. 1991) (citations omitted).

time. Because Creek has not shown that he had a right to such a hearing or to have his mental competency/sanity considered further, his counsel cannot be faulted, or more importantly, held to be ineffective, for failing to pursue the competency/insanity matter further. Counsel' performance, therefore, can hardly be said to be deficient, i.e., objectively unreasonable. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052.

■ [¶ 47] Nor has Creek shown that he was prejudiced by trial counsel's conduct and that such conduct would have produced a different outcome in the criminal judgment. *Id.* at 694, 104 S.Ct. 2052. Indeed, based on the result of the psychiatric evaluation that was ordered by the habeas court, had counsel pursued the competency/insanity issue (as Creek maintains counsel should have), the trial court would have inevitably found that Creek was mentally competent to stand trial and that he was not insane at the time he committed the forgery offenses. For Creek to establish the requisite prejudice under *Strickland,* he must demonstrate that the outcome (two forgery convictions) would have been different had his counsel pursued a different strategy. *Id.* He has failed to do so and as a result, cannot succeed on his ineffectiveness claim based on the failure to obtain an examination or hearing on his competency/sanity.

■ [¶ 48] Creek also claims that trial counsel spent too little time with him or investigating the case. The Supreme Court has held that the two-part *Strickland* test (deficient performance and prejudice) applies to defendants who enter guilty pleas. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The prejudice prong, however, is slightly modified. To demonstrate prejudice in the guilty plea context, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's errors,

he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. 366.

[¶ 49] Applied to this case, Creek must show that if trial counsel performed in the way Creek now requests, he would have pled not guilty and gone to trial. He has not done so.

[¶ 50] At the state habeas hearing, trial counsel testified that the prosecution had an overwhelming case and that Creek had no viable defenses to the charges. Creek himself confessed to the criminal acts and law enforcement had corroborating physical evidence of his guilt. Counsel, nonetheless, was able to prevail upon the prosecutor to drop two of the four felony charges and to dismiss the habitual offender information. Given the circumstances present, it is highly unlikely that Creek would have achieved a better result than this at trial. It is equally dubious that Creek would have proceeded to trial and assumed the risks attendant thereto, especially with a deck that was heavily stacked against him.

[¶ 51] The likelihood that trial counsel would have recommended that Creek go to trial and decline the plea bargain offered by the prosecutor is remote. In fact it may very well have been unreasonable for counsel to advise Creek to try the case, considering Creek's admissions and the other evidence the prosecution had against him.

[¶ 52] Regardless, Creek must show that what trial counsel did or failed to do affected the outcome of the plea process. He has failed in this regard. The records on file do not make manifest that any assumed error on the part of counsel caused Creek to plead guilty rather than go to trial. Creek's own admissions coupled with the lack of any defenses to the charges placed him in an almost insurmountable position that counsel was able

to mitigate with a plea bargain that provided substantial benefits to Creek and that he would have been fool hearty to not accept. There can be little doubt that Creek was not prejudiced by counsel's conduct within the meaning of *Hill,* 474 U.S. at 59–60, 106 S.Ct. 366.

### VIII.

[¶ 53] For his third claim, Creek alleges that:

The Minnehaha County Second Judicial Circuit, and Supreme Court of the State of South Dakota contrived a conviction through the pretense of a trial which in truth is but used for the judges as a means of depriving a defendant of liberty through a deliberate deception of court, and suppression by those same authorities of evidence favorable to him.

Docket No. 1 at p. 6.

[¶ 54] Summary dismissal of a habeas corpus claim is proper where the claim is "based solely on 'vague, conclusory or palpably incredible' allegations or unsupported generalizations." *Beavers v. Lockhart,* 755 F.2d 657, 663 (8th Cir.1985) (*quoting Machibroda v. United States,* 368 U.S. 487, 495, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962)). Creek's allegations, that the State "contrived a conviction", are obscure, conclusory and unsupported by any factual specifics to state a claim for relief under § 2254. *Spillers v. Lockhart,* 802 F.2d 1007, 1009–10 (8th Cir.1986); *see also Beavers,* 755 F.2d at 663 (where the habeas claim that a state criminal law was unconstitutionally applied based on race was supported only by the assertion that " 'the petitioner is black in a white society where justice is a false hope.' "). The claim is subject to dismissal for this reason alone.

[¶ 55] Additionally, Creek's claim is a defaulted one that need not be surveyed. Creek initially raised his claim in the state habeas proceedings, but later abandoned it. He did not present the claim in his motions seeking a certificate of probable cause after the habeas court ruled against him. His claim, therefore, is unexhausted. Because he is procedurally barred under South Dakota law from filing a successive petition, *see* SDCL 21–27–16.1, and that bar provides an independent and adequate basis for upholding his conviction[5] and because no cause or prejudice for his default or actual innocence has been shown, his claim is not cognizable in federal court and is subject to dismissal with prejudice. *Armstrong v. Iowa,* 418 F.3d 924, 925–27 (8th Cir.2005), *cert. denied,* 546 U.S. 1179, 126 S.Ct. 1351, 164 L.Ed.2d 63 (2006); *Whitepipe,* 536 F.Supp.2d at 1098–1100; *see also Cagle v. Norris,* 474 F.3d 1090, 1098 (8th Cir.2007) (observing that a federal court may raise the issue of procedural default *sua sponte* ).

### IX.

[¶ 56] Creek's fourth claim alleges that the State deprived him of rights guaranteed by the federal Constitution. In support of this claim, he states as follows:

Both the lower and higher courts, of the State of South Dakota did not in terms address itself to the equal protection of

---

5. Procedural default of a claim under state law may constitute an independent and adequate state ground that precludes federal review, *see Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), but only if the state procedural rule is firmly established, regularly followed and readily ascertainable, *see Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). Having reviewed § 21–27–16.1 and case law from the South Dakota Supreme Court interpreting it, this Court is satisfied that these requirements have been met. *Whitepipe v. Weber,* 536 F.Supp.2d 1070, 1100, n. 7 (D.S.D.2007); *see also Primeaux v. Dooley,* 2008 SD 22, ¶¶ 9–11, 747 N.W.2d 137, 139–40.

the laws " 'for purposes of habeas corpus constitutional violations in a criminal case deprive those courts of jurisdiction.' "

Docket No. 1 at p. 6. As with the preceding claim, this claim, and the allegations in support of it, are enigmatic, conclusory and lack the sufficiency necessary to state a ground for § 2254 relief. *See Spillers,* 802 F.2d at 1009–10; *see also Amos v. State of Minnesota,* 849 F.2d 1070, 1072 (8th Cir.), *cert. denied,* 488 U.S. 861, 109 S.Ct. 159, 102 L.Ed.2d 130 (1988). The claim likewise was never presented in Creek's state habeas case or raised in any of his certificate of probable cause motions and is therefore procedurally defaulted. *See Armstrong,* 418 F.3d at 926–27; *Whitepipe,* 536 F.Supp.2d at 1098–1100. Either way, Creek's claim must be dismissed.

### X.

[¶ 57] In a handwritten letter filed with the Court, Creek makes various assertions about habeas corpus. Docket No. 7. He does not, however, state any particularized grounds upon which relief should be granted beyond those already set forth in his petition with the exception of this: "[T]he state's courts' introduction of extraneous prior bad acts evidence during the review constitutes error of constitutional proportions." The Court recognizes that the introduction of improper evidence during a trial can lead to error of constitutional magnitude under certain circumstances. Creek, however, does not identify what evidence he is referring to or show how his rights were violated under federal law. He therefore has not raised a cognizable claim for relief.

### XI.

[¶ 58] In a legal memorandum, Creek speaks of certain matters relating to federal Indian law. Docket No. 13. These matters appear to arise out of his Pennington County rape conviction and are not relevant to this case.[6]

### XII.

[¶ 59] Although somewhat hard to decipher, Creek appears to claim, in a letter to the District Court, Docket No. 19, that the state habeas court used his prior Pennington County rape conviction against him. This is not the case.

[¶ 60] At the outset, the record clearly indicates that the habitual offender information, under which Creek was originally charged, was dismissed as a component of his plea agreement. Furthermore, Creek does not challenge any actions taken by the sentencing court in his letter, but rather, speaks only of the habeas court's use of his prior conviction. While the court did make mention of the conviction in its findings and decision, it did so as part of a background discussion of the habeas case and after Creek brought the matter up and even testified to the same himself.

[¶ 61] In any event, nothing in Creek's letter provides him with an independent ground for federal habeas relief. Any additional claims, raised by Creek in his letter, must therefore be denied.

### XIII.

[¶ 62] In a motion for default judgment and to vacate the District Court's May 22, 2008 order, Creek cites to and relies on several statutes and cases that relate to

---

**6.** Whether the state courts of South Dakota had jurisdiction to charge and convict Creek, an enrolled member of the Cheyenne River Sioux Tribe, for the rape of an Oglala Sioux tribal member that occurred at the Lakota Community Homes, somewhere north of Rapid City, South Dakota, in Pennington County, has no bearing whatsoever on the validity of his Minnehaha County state court convictions.

his federal habeas case and claims raised by him. Docket No. 27. The Court has read through the motion several times and can find nothing in it that constitutes an independent, or even a dependent, basis for relief from Creek's state court criminal judgments. None of the statutes or cases Creek refers to help him establish that he is now in custody because of a federal law violation or show that the state court's disposition of his case was unreasonable, as a matter of law or fact, and/or contrary to Supreme Court precedent. More importantly, the District Court's order is unimpeachable and will not be disturbed.

### XIV.

[¶ 63] Creek has filed a brief in support of his habeas petition. Docket No. 28. The brief contains a somewhat rambling set of disconnected arguments that contain no separate or independent grounds for § 2254 relief.

[¶ 64] At one point in his brief, Creek makes a passing reference to ineffective assistance of counsel. He fails to elaborate or otherwise explain this argument with any modicum of particularity or point to facts in the record which substantiate any claim of inadequate counsel. It is therefore no different than the other conclusory claims and allegations he has raised and, like them, should be summarily dismissed.

[¶ 65] At another point in his brief, Creek arguably raises a new claim, to wit: that his sentence was grossly disproportionate. While facially such a claim may be of constitutional dimensions, it is not a viable one in Creek's case for at least three reasons.

[¶ 66] First, the new claim is barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1). The claim, raised 23 days [7] after the expiration of the limitations period, does not arise from the same core of operative facts as the claims Creek alleged in his petition. *Mayle v. Felix*, 545 U.S. 644, 659, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005); *see also United States v. Hernandez*, 436 F.3d 851, 857–58 (8th Cir.), *cert. denied*, 547 U.S. 1172, 126 S.Ct. 2341, 164 L.Ed.2d 856 (2006). Hence, Creek's out of time claim is unreviewable.[8] *See Hernandez*, 436 F.3d at 858–59.

[¶ 67] Second, the claim is an unexhausted one that has been procedurally defaulted without any showing of cause and prejudice for the default. *Armstrong*, 418 F.3d at 925–27; *Whitepipe*, 536 F.Supp.2d at 1098–1100. As a consequence, the claim is forever lost.

[¶ 68] Third, Creek's summary description of his claim is wholly inadequate to state a cognizable basis for relief. In particular, the description is insufficient to establish that the state habeas court's decision was at odds with applicable federal law or was at all unreasonable. This deficiency is a fatal flaw under § 2254(d).

### XV.

[¶ 69] Creek's joint motion to discharge convictions for failure to comply with SDCL 22–30A–17/23A–5–15, Docket No. 31, appears to bring up another new claim relating to the applicability of the rules of evidence to state grand jury proceedings. As already discussed in the immediately preceding section, this claim is untimely under the rule in *Mayle*. The claim is also

---

7. The time limit for Creek to collaterally attack, in federal court, his forgery convictions expired on May 5, 2008. His sentencing claim, however, was not brought up until May 28, 2008, 23 days too late.

8. This is also the case with respect to any new claims raised by Creek in documents filed on and after May 6, 2008.

unexhausted and procedurally defaulted because it was never presented to the state courts for them to consider. Either or both of these grounds are enough to dismiss the claim.

[¶ 70] Creek seemingly raises a second claim in his motion. He alleges that proof that the property involved had a value in excess of $500 was required before he could be convicted. Forgery, under state law, is always a felony and valuation is not an element of the offense. SDCL 22–39–36 (1976). To be convicted of a felony theft offense, there must be evidence presented that the value of the stolen property was more than $500. SDCL 22–30A–1 (1976); 22–30A–17 (2001). Creek though was convicted, not of forging an instrument for money, but rather, of forging legal documents. The money or value, if any, at stake in Creek's forgery case is immaterial and can be disregarded.

### XVI.

[¶ 71] Aside from his petition, Creek has filed a separate motion to dismiss his judgment of conviction. Docket No. 33. This motion repeats other claims already made and discussed herein. Inasmuch as the motion fails to set forth any independent grounds for relief, it should be denied.

### XVII.

[¶ 72] The same is true for Creek's brief in support of his dismissal motion, Docket No. 34, filed more than two months after the motion itself. The brief contains arguments in support of claims, including and especially ones pertaining to ineffective assistance of counsel and to sentencing, that have already been dealt with and rejected. There is no reason to pass on them again.

### XVIII.

[¶ 73] By written motion, Creek requests that Weber be sanctioned and held in contempt for failing to file a timely memorandum as required by the District Court's April 7, 2008 order. Docket No. 37. This Court is satisfied that Weber's neglect was inadvertent and that good cause existed for the neglect. *See* Docket Nos. 39, 40. While non-compliance with the District Court's order cannot be condoned, this Court finds and concludes that Creek has not been unduly prejudiced by the delay, especially since Weber has responded to the claims and allegations raised by Creek in his motion and in other documents filed by him pursuant to the Court's October 15, 2008 order. Docket No. 35. With the requisite willful contemptuous disregard of a court order lacking here and sanctions being unwarranted, Creek's motion should accordingly be denied.

### XIX.

[¶ 74] In a document entitled "Set Aside State Court Judgment", Docket No. 38, Creek reiterates a number of the same claims he has made throughout this case. As pointed out earlier, ineffective assistance of counsel in a guilty plea case, such as this one, requires that the petitioner show that he would not have pled guilty, but insisted on going to trial had trial counsel performed differently. *Hill*, 474 U.S. at 59, 106 S.Ct. 366. Creek has failed to make such a showing in any of his filings.

[¶ 75] Further, Creek seems to misapprehend when undeveloped facts, in support of a claim, can be further developed in federal court. Section 2254(e)(2) requires that a petitioner explain why facts were not developed in state court when there was an adequate opportunity to develop them there. A court is prohibited from holding an evidentiary hearing on a claim unless the petitioner is able to show that his claim relies on a new rule of

constitutional law or a factual predicate that could not have previously been discovered through the exercise of due diligence and that the facts underlying the claim would be sufficient to establish, by clear and convincing evidence, that but for the constitutional error, no reasonable fact finder would have found him guilty of the underlying offense(s). *Moore–El v. Luebbers*, 446 F.3d 890, 900 (8th Cir.), *cert. denied*, 549 U.S. 1059, 127 S.Ct. 673, 166 L.Ed.2d 525 (2006).

[¶ 76] Creek had every opportunity to develop the facts in support of his claims in the state court proceedings. If he had any facts that would show his actual innocence of the forgery offenses, he could have developed them in state court. He is foreclosed under § 2254(e)(2) from doing so now. *Moore–El*, 446 F.3d at 901.

[¶ 77] At any rate, the record plainly indicates that Creek pled guilty to two forgery offenses, after admitting that he had done them, and that his convictions were not caused by constitutional error. Further fact development, if the same was available to Creek, would be futile. *Id.*

## XX.

[¶ 78] In his memorandum of law supporting deprivation of liberty, Docket No. 42, Creek mentions *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). These two cases relate to a claim that Creek, until now, had not raised in this case. Because the one-year statute of limitations period has long since run (it expired more than six months before the memorandum was filed), and because the claim does not relate to any of the claims previously asserted in his § 2254 petition, the claim must be dismissed. *Hernandez*, 436 F.3d at 857–59.

[¶ 79] Yet, even if the claim is reviewable, it was resolved against Creek by the state habeas court, on the ground that he had waived any right to relief by pleading guilty. The habeas court's decision was a reasonable one and in conformity with federal law.

## XXI.

[¶ 80] Ever vigilant, Creek has filed two motions to dismiss and an "Analysis Statement" in support of a third motion. Docket Nos. 43, 46, 50. All three of these filings are no more than a rehash of arguments already made and ruled on by the Court. They will not be discussed any further.

## XXII.

[¶ 81] A habeas petitioner is required to obtain a certificate of appealability ("COA") from a district or circuit judge before appealing from the denial of a federal habeas petition. *See* 28 U.S.C. § 2253(c). A district court is authorized to issue a COA under § 2253(c) and Fed. R.Civ.P. 22(b). *see Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir.1997), if it finds a substantial showing of the denial of a federal constitutional right, *see Carter v. Hopkins*, 151 F.3d 872, 874 (8th Cir.), *cert. denied*, 525 U.S. 1007, 119 S.Ct. 524, 142 L.Ed.2d 435 (1998); *Ramsey v. Bowersox*, 149 F.3d 749, 759–60 (8th Cir.1998), *cert. denied*, 525 U.S. 1166, 119 S.Ct. 1083, 143 L.Ed.2d 85 (1999). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir.1997), *cert. denied*, 525 U.S. 834, 119 S.Ct. 89, 142 L.Ed.2d 70 (1998).

[¶ 82] The Court is convinced that Creek cannot satisfy this standard and make the requisite "substantial showing" with respect to any of his claims. None of them come even close to running afoul of

the Constitution and for this reason, a COA should be denied.

### XXIII.

[¶ 83]   Based on the foregoing findings of fact and legal discussion and pursuant to § 636(b) and Rule 8(b) of the § 2254 Rules, it is hereby

[¶ 84]   RECOMMENDED that Creek's claims for relief, addressed herein, and/or not already decided by the District Court, be denied in all respects.   It is further

[¶ 85]   RECOMMENDED that Creek's petition under § 2254, for a writ of habeas corpus by a person in state custody, Docket No. 1, be dismissed with prejudice.   It is further

[¶ 86]   RECOMMENDED that Creek's additional motions, now pending and found at Docket Nos. 27, 31, 33, 37, 38, 43, and 50, be denied in their entirety.   It is further

[¶ 87]   RECOMMENDED that a COA, if one is sought by Creek, be denied as to all claims and issues raised in his § 2254 petition and otherwise.

Dated this 30th day of December, 2008, at Pierre, South Dakota.